# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

In Re:

CUSTOM BUILDERS OF
STEAMBOAT, INC., CUSTOM
BUILDERS, INC.; STEAMBOAT
CUSTOM BUILDERS, INC.

**Debtor.**

**Bankruptcy Case
No. 04-02970**

_____

### MEMORANDUM OF DECISION
_____

**Appearances:**

>Laura Burri, RINGERT, CLARK, CHTD., Boise, Idaho, Attorney for Debtor.

>Robin Long, MARTELLE LAW OFFICES, Eagle, Idaho, Attorney for Creditor Gamel.

>Richard Crawforth, Boise, Idaho, Trustee.

### Background

On December 15, 2004, Creditor Leslie Gamel ("Creditor") filed a motion pursuant to Fed. R. Bankr. P. 1014 to either dismiss the bankruptcy case of

MEMORANDUM OF DECISION - 1

Debtor Custom Builders of Steamboat, Inc. ("Debtor") based on improper venue, or in the alternative, to transfer the case from the District of Idaho to the District of Colorado. Docket No. 8. In her motion, Creditor contends that it would be in the interests of justice and more convenient for the parties to have the case administered by the bankruptcy court in Colorado. Debtor objected to the motion, arguing the case should remain in Idaho.

The Court conducted a hearing on the motion on March 30, 2005, at which time it also considered Debtor's motion to strike the affidavits Creditor submitted in support of her venue motion. Docket No. 26. The Court allowed the parties to submit additional briefing after the hearing.[1] After due consideration of the evidence, testimony and arguments of the parties, the Court intends this Memorandum as its findings of fact, conclusions of law and disposition concerning the motions. Fed. R. Bankr. P. 7052; 9014.

### Facts

Debtor is a Colorado corporation that provided general contractor services and built custom homes in Steamboat Springs, Colorado. Mr. Fernand

---

[1] Debtor submitted an additional and timely memorandum on April 8, 2005, Docket No. 33, which the Court took into consideration in its decision. However, the Court deemed the evidentiary record closed at the conclusion of the hearing on March 30, and therefore the affidavit of Mr. Geneau, Docket No. 32, also filed on April 8, was untimely and was not considered.

MEMORANDUM OF DECISION - 2

Geneau is Debtor's principal and president. Debtor built a "spec" home that, after completion, Creditor purchased on February 13, 2002, for $1.2 million. Ex. 6. In connection with the sale of the home, Debtor issued Creditor a written warranty, dated March 25, 2002, covering any defects in material and workmanship for a period of one year. If defects or problems covered by the warranty arose, Debtor agreed to repair or resolve them. Ex. 5.

Creditor apparently notified Debtor about several warranty issues requiring attention. When Debtor allegedly failed to remedy the problems, Creditor sued Debtor in Colorado state court for breach of the warranty and for damages, including the costs incurred to repair the home. Ex. 3. Debtor did not contest Creditor's complaint and the court entered a default judgment against Debtor on August 22, 2003, for $84,381.88, which amount included Creditor's damages, attorney fees, costs, and accrued interest. Ex. 3.

By this time, Mr. Geneau's health had deteriorated. He had suffered a heart attack in 2002 and had undergone back and bypass surgery. He and his wife, Linda, decided to move to McCall, Idaho sometime in 2003. Because he was no longer able to engage in the hands-on physical activity required to build large homes, he desired a change in life-style.

MEMORANDUM OF DECISION - 3

When they decided to move, Mrs. Geneau, an accountant, sold her practice. While she was in business, Debtor had employed Mrs. Geneau and her firm to provide bookkeeping and accounting services, including preparation of Debtor's 2003 tax return. Ex. 4. When Mr. and Mrs. Geneau moved to Idaho, they brought all of Debtor's books and records, as well as its assets, with them. The assets consisted primarily of a modest collection of small power and hand tools used in the construction trade. Ex. 1, Sched. B. After the move, Debtor no longer operated in Colorado. Mr. Geneau formed another business entity, Payette Builders, to do construction work in McCall. For a time, Debtor rented its tools to Payette Builders.

Creditor pursued collection of her state court judgment against Debtor in Colorado. The collection efforts were stayed, however, when Debtor filed its petition for bankruptcy relief under Chapter 7 on August 17, 2004. Ex. 1; Docket No. 1. The Chapter 7 trustee took possession of the assets disclosed in Debtor's schedules. Besides the tools, there are no other assets, except for about $40 in a Colorado bank account and an unpaid account receivable in the amount of $27,994.00 that Debtor has characterized as uncollectible. Ex. 1, Sched. B.

Debtor has few creditors. There are no secured creditors. Ex. 1, Sched. D. Ms. Gamel is the holder of the largest unsecured claim, approximately

MEMORANDUM OF DECISION - 4

$84,000.00.  Debtor's other creditors, with the exception of Bruce Miller, are all

related to Mr. Geneau and reside in Idaho.  Mr. Miller, who lives in Texas, loaned

money to Debtor and is owed $48,998.16.  Charles Ramsey is Mr. Geneau's

father-in-law and holds  a claim of $16,000; Debtor owes Mrs. Geneau's

accounting firm $6,848.75, and Mrs. Geneau $9,600.00.  Ex. 1, Sched. F.

Creditor argues that Debtor still maintains a presence in Colorado,

and that for the convenience of the parties and witnesses, the bankruptcy case

should be transferred to Colorado.  Creditor seeks to continue her efforts to collect

her state court judgment, and contends that by transferring venue of the

bankruptcy case to Colorado, it would be easier for her to continue those efforts in

the context of Debtor's bankruptcy case.  Debtor, on the other hand, points out

that it no longer operates in Colorado, and is essentially a defunct corporation.

Debtor also contends that all of the information Creditor seeks can be obtained

without transferring the bankruptcy case to Colorado.

**Disposition**

**A.  Debtor's Motion to Strike Creditor's Affidavits.**

Creditor filed two affidavits in support of her motion to dismiss or

change venue.  Docket Nos. 12, 13.  Debtor objected to both affidavits on the

grounds that they contain information that is not factual, is speculative or

MEMORANDUM OF DECISION - 5

conclusory in nature, and include hearsay, in violation of Fed. R. Evid. 601, 602,

701, and 802.  However, Debtor did not point to any specific statements in the

affidavits, or otherwise make a showing as to why any such statements contained

within the affidavits violated the evidentiary rules cited.  The Court is not obliged

to scrutinize the affidavits and decide whether each and every representation

contained in these documents passes evidentiary muster.  *Cf. Keenan v. Allan*, 91

F.3d 1275, 1279 (9th Cir. 1996) (explaining that it is not the task of the district

court to scour the record in search of triable issues of fact, and it is up to the

moving party to identify the appropriate evidence).  Absent appropriately tailored

objections, Debtor's motion to strike the affidavits will be denied.[2]

**B.  Venue.**

> Venue for a bankruptcy case is proper
>
> in the district court for the district—
>
> (1) in which the domicile, residence, principal place of
> business in the United States, or principal assets in the
> United States, of the person or entity that is the subject
> of such case have been located for the one hundred and
> eighty days immediately preceding such
> commencement . . . .

---

[2]  To the extent the affidavits do contain inadmissible material, the Court's
consideration of such representations is likely harmless.  This is because the Court has
not relied upon any of the statements or allegations made in the affidavits in reaching its
decision concerning venue.

MEMORANDUM OF DECISION - 6

28 U.S.C. § 1408(1).

At the time of the filing of the bankruptcy case, Debtor was no longer engaged in business in Colorado. Debtor's principal assets are located in Idaho and have been for the time period required in the statute. Venue is therefore proper in the District of Idaho.

Even so, 28 U.S.C. § 1412 allows the transfer of a case properly filed in one district to another district. Fed. R. Bankr. P. 1014(a)(1) proscribes the procedure for transferring a bankruptcy case. If, upon motion and after notice and a hearing, the Court determines that the transfer "is in the interest of justice or for the convenience of the parties," the case may be transferred to another district. 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014 (a)(1). Factors to be considered in a change of venue are:

> 1. The proximity of creditors of every kind to the Court;
> 2. The proximity of the bankruptcy (debtor) to the Court;
> 3. The proximity of the witnesses necessary to the administration of the estate;
> 4. The location of the assets;
> 5. The economic administration of the estate; [and]
> 6. The necessity for ancillary jurisdiction if bankruptcy should result.

*In re Brooks Truck Line, Inc.*, 97.4 I.B.C.R. 113, 113 (Bankr. D. Idaho 1997) (quoting *In re Kona Joint Venture I, Ltd.*, 62 B.R. 169, 172 (Bankr. D. Haw.

MEMORANDUM OF DECISION - 7

1986)); *see also Waldron v. Skamser* (*In re Skamser*), 04.2 I.B.C.R. 70, 70 (Bankr. D. Idaho 2004) (considering similar factors in the context of an adversary proceeding).

The party urging a change of venue has the burden of showing, by a preponderance of the evidence, that the transfer is warranted. *Skamser*, 04.2 I.B.C.R. at 70; *In re Kona Joint Venture I, Ltd.*, 62 B.R. at 172. "Courts have broad discretion in deciding motions under 28 U.S.C. § 1412, and such requests must be reviewed on a case-by-case basis. . . . If the relevant factors do not weigh decidedly in either party's favor, the debtor's choice of forum in filing the underlying bankruptcy case is entitled to deference." *Skamser*, 04.2 I.B.C.R. at 70–71 (internal citations omitted).

In this case, the Court notes that only two of Debtor's five creditors reside outside Idaho. Of those two, only Ms. Gamel, the largest unsecured creditor, has thus far been active in Debtor's bankruptcy case. Mr. Miller, who is in Texas, gains no advantage from a transfer of the case to Colorado. Moreover, because this is a corporate liquidation under Chapter 7 of the Bankruptcy Code, Debtor's assets will simply be sold and the cash generated will be distributed to Debtor's creditors, wherever they may be. There is no reason why an Idaho

MEMORANDUM OF DECISION - 8

trustee cannot administer the cash generated from the sale of Debtor's assets to out-of-state creditors such as Ms. Gamel and Mr. Miller.

Second, the Court is skeptical whether a change of venue would be in the interests of justice, more convenient for the parties, or aid in the economic administration of Debtor's estate. Although Debtor is still technically a Colorado corporation, it has no ongoing operation in Colorado and no offices there. While it may exist in Colorado, it does so in name only. Debtor's principals lives here in Idaho, and they have in their possession all of Debtor's corporate books and records. Debtor's principals, because of their Idaho residency, can be more readily available to a Chapter 7 Trustee here in Idaho should questions arise concerning Debtor's books and records. And, they can assist the Trustee, who is currently involved in liquidating Debtor's assets. Such proximity to Debtor's principals, records, and assets would facilitate the administration of the estate in Idaho.

Concerning Debtor's assets, there is nothing special or unique about them that would suggest they be sold in Colorado, as opposed to Idaho. No expertise of a Colorado court or the application of Colorado state law should be implicated in liquidating the bankruptcy estate.[3]

---

[3] Creditor objected to the Trustee's proposed sale of Debtor's assets. Docket No. 22. Creditor wanted the sale to take place in Colorado. The Court, however, denied

MEMORANDUM OF DECISION - 9

Nor has Creditor identified any Colorado witnesses whose testimony might be necessary in proceedings to administer the estate. Unlike a Chapter 11 filing where others are involved in a debtor's continuing operations, this is a liquidation under Chapter 7 with no ongoing corporate operations to consider. And because under 11 U.S.C. § 727(a)(1) Debtor will not be granted a discharge of its debts, including the debt owed Creditor, there will be no need for related discharge litigation, either.

In sum, it is unclear if any benefit would result from the transfer Creditor seeks. Instead, it is only Creditor who will benefit, not in a manner related to the administration of Debtor's estate, but rather related to her efforts to collect her state court judgment. By transferring venue of the bankruptcy case to Colorado, Creditor would gain the advantage of requiring Mr. Geneau to come there for any proceedings she might initiate within the bankruptcy case, in furtherance of her collection action.[4] But Creditor is free to pursue her collection

---

Creditor's objection, concluding that the assets could be liquidated in Idaho more economically than if the estate incurred additional costs transporting them to Colorado. *See* Order, Docket No. 31.

[4] According to Creditor, such proceedings would include a Rule 2004 examination of Debtor's principals. But, when asked, Creditor could not offer any reason why such examinations could not be conducted in Idaho as inexpensively and easily as in Colorado. A Rule 2004 examination would not not require Creditor's personal presence. Indeed, Creditor has already retained experienced local counsel to assist her, presumably at a cost less than that charged by Colorado attorneys.

MEMORANDUM OF DECISION - 10

efforts once the bankruptcy case is closed, or to seek stay relief to do so. Despite the bankruptcy case, and even though Debtor no longer operates, Debtor and its debts will survive and Creditor can continue her collection efforts in an appropriate forum.[5]

---

[5] Creditor voices her concern that Debtor is the mere alter ego of Mr. Geneau, and that Debtor's principals possess other assets which could be reached for the benefit of Debtor's creditors. Aff. of Creditor, ¶¶ 9–11, Docket No. 12. Although not germane to the Court's decision, the Court notes that if this is so, the local Chapter 7 trustee may pursue the assets. If he does not, because this is a corporate Chapter 7 case, Creditor's causes of action likely survive the bankruptcy, and she may pursue them either against the corporation or its alter egos. 6 *Collier on Bankruptcy* ¶ 727.01[3], at 727-10–11 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) (discussing that bankruptcy does not dissolve a corporation, and noting that, under the holding in *NLRB v. Better Bldg. Supply Corp.*, 837 F.2d 377 (9th Cir. 1988), creditors could pursue the alter egos of corporate debtors after bankruptcy).

MEMORANDUM OF DECISION - 11

## Conclusion

Creditor's motion to dismiss this bankruptcy case, or to transfer the case to Colorado, will be denied. Debtor's motion to strike will also be denied. A separate order will be entered.

Dated: April 22, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge